712 P.2d 727

Terrence R. PRINGLE,
Plaintiff-Appellant,

v.

Ida Rose PRINGLE,
Defendant-Respondent.

No. 15600.

Court of Appeals of Idaho.

Dec. 24, 1985.

James A. Bevis, Boise, for plaintiff-appellant.

M. Karl Shurtliff, Boise, for defendant-respondent.

BURNETT, Judge.

The question presented is whether a divorce decree may compel one spouse to sell his or her separate property to the other spouse. In this case, a magistrate directed the wife to sell her separate property to the husband. On appeal, the district court held that such an order was beyond the magistrate's authority. We affirm the district court's decision.

Terrence Pringle and Ida Rose Pringle were married in December, 1969. Before the marriage they lived together. During this period of cohabitation, Ida purchased land in Garden City, Idaho.[1] She later testified that she made a down payment on the land with proceeds from a sale of other property. The husband acknowledged at trial that the wife had purchased the prop-

---

1. The exact date of the purchase is not established by the record. Neither the purchase contract nor a deed to the property was admitted into evidence at trial. However, the wife testi-fied that the purchase occurred before the marriage and, as noted *infra*, the trial judge so found.

erty "in her name." However, he testified that the wife had borrowed the money from her father and that she repaid the loan during the marriage with earnings from the husband's business.

The magistrate found that the land "was acquired by the [wife] prior to her marriage" and that community funds were used to "pay off a debt" on the land. The magistrate concluded that the land was the wife's separate property, but he ordered reimbursement to the community for its expenditures. The judge further directed that the husband be allowed to "buy out" the wife's separate interest in the land at fair market value. These appeals followed.

Preliminarily, we must decide whether the Garden City land was properly characterized as the wife's separate property. The district judge did not address this issue during the initial appeal. Rather, for reasons not germane to this discussion, he dispensed with a transcript and plunged directly into the "buy out" question, treating it strictly as a matter of law. However, the characterization issue now is properly before us on a full record.

■ The general rules governing this issue are well-known. Assets acquired by either spouse during marriage are rebuttably presumed to be community property. Assets acquired before marriage are separate property. *Suchan v. Suchan*, 106 Idaho 654, 682 P.2d 607 (1984). The character of the property vests at the time of its acquisition. *Winn v. Winn*, 105 Idaho 811, 673 P.2d 411 (1983). If proceeds from a sale of separate property are used to acquire other property, the acquired property also is separate in character. I.C. § 32–903; *Travelers Insurance Co. v. Johnson*, 97 Idaho 336, 544 P.2d 294 (1975).

■ The application of these rules is illustrated by *Fisher v. Fisher*, 86 Idaho 131, 383 P.2d 840 (1963) and by *Griffin v. Griffin*, 102 Idaho 858, 642 P.2d 949 (Ct.App. 1982). In each case, one of the spouses contracted to buy property before the marriage and made a down payment. Subsequent payments were made during the marriage with community funds. The property was held to be the separate property of the purchasing spouse, subject to the community's right to reimbursement. Each of these holdings was affirmed on appeal. We believe the same result follows in this case. The facts are analogous. The only difference, if the husband's testimony were accepted, is that the down payment was borrowed and later was repaid with community funds. The magistrate made no specific finding on this point. However, even if the down payment was borrowed, it would not change the fact that the wife bought the property before the marriage. The property would remain separate. Only the size of the community's claim for reimbursement would be affected. Accordingly, we uphold the magistrate's characterization of the Garden City land as the wife's separate property.

We now turn to the "buy out" question. The magistrate elected to make a substantially equal division of community property. A mobile home, a business and other improvements on the Garden City land were allocated to the husband. Real estate in Cascade, Idaho, and other assets were distributed to the wife. Noting that the wife no longer resided in Garden City, and that it would be "manifestly unfair" to require the home and business to be moved, the magistrate authorized the husband to "buy out" the wife's separate interest in the Garden City land.

From a purely equitable standpoint, the magistrate's decision is sound. Where, as here, property is separate in character but has been purchased largely with community funds, and has been used for community purposes, justice might be better served by distributing the property according to the parties' relative needs, rather than by simply returning it to the original purchaser. The separate interest of the purchasing spouse could be protected by payment of compensation or by an offsetting award of other property.

However, Idaho law does not confer such authority. Idaho Code § 32–903 flatly declares that property owned before mar-

riage "shall remain" separate property. The statutes governing distribution of property upon divorce, I.C. §§ 32–712 to 32–714, provide only for disposition of "community property." [2] These statutes have been interpreted restrictively by our Supreme Court. In *Radermacher v. Radermacher,* 61 Idaho 261, 273–74, 100 P.2d 955, 961 (1940), the Court said that a judge "is without power to award the separate property of the husband to the wife, either permanently or temporarily." In *Heslip v. Heslip,* 74 Idaho 368, 372, 262 P.2d 999, 1002 (1953), a similar admonition was delivered: "[The] court has the power under [I.C. § 32–712] to divide the community property between the parties, but has no power or authority to award the wife's separate property, or any part of it, to the husband."

In recent years, the Supreme Court has adhered to this view. The Court declined to make any equitable award of separate property in *Simplot v. Simplot,* 96 Idaho 239, 526 P.2d 844 (1974). Conversely, an award of "common law" separate property, acquired in a non-community property state, was upheld in *Berle v. Berle,* 97 Idaho 452, 546 P.2d 407 (1976). But the Court was quick to add that "I.C. § 32–903 prohibiting the distribution of 'separate' property upon divorce is inapplicable...." *Id.* at 455, 546 P.2d at 410.

Although these cases speak of awarding or distributing separate property, we think they enunciate a policy equally applicable to a forced sale of separate property by one spouse to the other. The policy would be offended by any scheme for transferring separate property under a divorce decree. Of course, the Supreme Court has acknowledged that a judge may impose a lien against separate property. *Gapsch v. Gapsch,* 76 Idaho 44, 277 P.2d 278 (1954). The judge also may order a sale of community property containing a separate "equity." *Nichols v. Nichols,* 84 Idaho 379, 382,

372 P.2d 758, 760 (1962). But the Supreme Court has not authorized involuntary divestiture of title to separate property.

In this appeal, the husband has cited *Hanrahan v. Sims,* 20 Ariz.App. 313, 512 P.2d 617 (1973), *Whittenburg v. Whittenburg,* 523 S.W.2d 797 (Tex.Civ.App.1975), and *In re Marriage of Kittleson,* 21 Wash. App. 344, 585 P.2d 167 (1978), for the proposition that other jurisdictions allow divorce courts to dispose of separate property. However, *Hanrahan* does not so hold. Indeed, the law in Arizona appears to be the contrary. *Schwartz v. Schwartz,* 52 Ariz. 105, 79 P.2d 501 (1938). Reliance on *Whittenberg* also appears to be misplaced. The Texas constitution and statutes have been construed to prohibit reaching separate property in a divorce. *See Cameron v. Cameron,* 641 S.W.2d 210 (Texas 1982); *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Texas 1977). Only *Kittleson* appears to reflect the law of its jurisdiction, Washington, but there—unlike Idaho or any other community property state [3]—a statute expressly requires the courts to dispose of all property, "either community or separate." *See* R.C.W. 26.09.080.

In contrast, we find that decisions from California are instructive. The statutes of that state, like those of Idaho, authorize the division of community property in a divorce but contain no reference to distributing separate property. *See* Cal.Code Civil § 4800. The California Supreme Court long has held that divorce courts have "no jurisdiction" over separate property. *Reid v. Reid,* 112 Cal. 274, 44 Pac. 564 (1896). That view is still echoed by California appellate courts today. *E.g., Buford v. Buford,* 202 Cal.Rptr. 20, 155 Cal.App.3d 74 (1984); *Porter v. Superior Court,* 141 Cal. Rptr. 59, 73 Cal.App.3d 793 (1977).

We conclude that the magistrate in this case exceeded his authority by attempting to compel a transfer of separate

---

2. The statutes also refer to a "homestead." However, the magistrate in this case made no finding that the Garden City land was a "homestead," and no such theory has been advanced on appeal.

3. New Mexico authorizes distribution of separate property, but only as a form of alimony. *See* N.M.STAT.ANN. § 40–4–7.B(1).

property from the wife to the husband. The decision of the district court, setting aside that provision in the divorce decree, is affirmed. The case is remanded pursuant to the district court's order. Costs to the respondent.[4] Because this appeal has presented a substantial question of law, we decline to award attorney fees under I.C. § 12–121. On remand the magistrate may determine whether any attorney fees should be awarded under the separate authority contained in I.C. § 32–704.

WALTERS, C.J., and McFADDEN, J., Pro. Tem., concur.

---

4. As an ancillary issue on appeal, the husband has objected to paying for the trial transcript. He claims that the cost should have been imposed upon the wife during her appeal to the district court. However, the district judge acted within his authority by dispensing with a transcript in order to deal expeditiously with what he then perceived to be solely an issue of law. *See* I.R.C.P. 83(j). In any event, the transcript has been essential in the present appeal to examining the husband's attack upon the magistrate's characterization of the Garden City land as the wife's separate property. Consequently, we find no injustice in requiring the husband to bear this cost.